PATRICK M. RIORDAN, Plaintiff-Appellee, v. THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—88—3333

Opinion filed October 17, 1990.

Neil F. Hartigan, Attorney General, of Springfield (Diane Curry Grapsas, Assistant Attorney General, of Chicago, of counsel), for appellants.

Robert A. Mankivsky, of Bullaro & Carton, of Chicago, and James S. Kamperda, of Park Ridge, for appellee.

JUSTICE WHITE delivered the opinion of the court:

Following an administrative hearing the defendant Illinois Department of Registration and Education (DRE) suspended plaintiff Patrick M. Riordan's medical license for 30 days and placed that license on probationary status for two years. On administrative review the circuit court of Cook County reversed that order, finding that defendant's expert witness was not competent to testify about the appropriate standard of care allegedly violated by the plaintiff. Defendants DRE and DRE's Director, Gary Clayton, then brought this appeal from the order of the circuit court. We reverse and remand for reinstatement of the penalties imposed.

In November 1985 DRE filed a complaint before the Medical Disciplinary Board, alleging that Dr. Riordan had breached accepted standards of medical care when he admitted eight patients to Humana Hospital. The following pertinent facts were adduced at the administrative hearing. Dr. Riordan is board certified in family practice but at the time of the hearing he specialized in pain control. His office was in Chicago and he worked out of Humana Hospital in Hoffman Estates. Defendants' expert witness was Dr. Chauncey Maher, a physician for 35 years, who practices internal medicine and specializes in nephrology (kidneys) and hypertension. Dr. Maher testified that his practice was in Springfield, Illinois, where he also served as a clinical associate professor of medicine at Southern Illinois University School of Medicine. The doctor was the medical coordinator for DRE's Medical Disciplinary Board. He also served on the medical utilization committee at a Springfield hospital.

At the hearing DRE introduced medical records from Dr. Riordan

and Humana concerning eight patients hospitalized at Humana by Dr. Riordan between November 1982 and March 1983. All these patients had been involved in automobile accidents. Dr. Maher reviewed these records and testified that six of those patients had been unnecessarily hospitalized. He also found that Dr. Riordan had kept inadequate medical records on these patients, had prescribed inappropriate treatments and tests, and had ignored appropriate treatments. In Dr. Maher's opinion many of Dr. Riordan's discharge diagnoses were questionable. In several instances there was no record of an out-patient consultation by any doctor. Dr. Maher concluded that Dr. Riordan's treatment of six of these patients had deviated from acceptable standards of care.

Dr. Riordan testified in defense of his treatment of only three of these patients. Because his motion to disqualify the hearing officer was denied, he refused to testify further. He also presented the testimony of Dr. Raymond Oses, a licensed Illinois physician specializing in family practice. Dr. Oses testified that he had reviewed the records of four of the patients. He concluded as to these patients that there were no improprieties in their admission to the hospital. Dr. Oses also testified that the decision to admit a patient was entirely within the discretion of the treating physician. He stated that he became involved in the case because he had known Dr. Riordan for years and Dr. Riordan asked him to analyze the case and then to testify for him.

The Medical Disciplinary Board (the Board) adopted the conclusions of Dr. Maher. The Board found that Dr. Riordan's inappropriate hospitalization of these patients exposed them to unnecessary risk from being in the hospital. It also found that the inappropriate utilization of hospital facilities constituted unprofessional conduct likely to harm the general public as well as the individual patients. Accordingly, the Board recommended that Dr. Riordan's license be suspended for 30 days and that he be placed on a two-year probation, with the condition that he successfully complete 100 hours of course work in diagnosis and treatment of trauma. This course work was to be approved in advance by the Board. On March 30, 1987, DRE entered an order adopting those recommendations.

Dr. Riordan then filed a complaint for administrative review in the circuit court of Cook County. On October 12, 1988, the circuit court entered an order reversing DRE's decision as against the manifest weight of the evidence. The court found that Dr. Maher was not competent to testify about the standard of care in Chicago because his practice was in Springfield, not in Chicago, where Dr. Riordan practiced. The court stated that the record contained no showing of the

standard of care in Chicago or that Springfield standards were similar. The court also noted that Dr. Maher specialized in kidney diseases and rarely saw trauma cases whereas Dr. Riordan's practice was pain control.

The sole issue before us is the propriety of the circuit court's determination that Dr. Maher was not competent to testify. Dr. Riordan does not contend that Dr. Maher's testimony itself was insufficient to support the Board's finding, assuming that Dr. Maher was qualified to testify. Nor would such a contention be tenable, given the standards of review applicable to the circuit court and this court in administrative review cases. The findings of fact made by the administrative body are statutorily deemed to be *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) In this cause the Board clearly chose to accept Dr. Maher's testimony and rejected the limited testimony of Dr. Riordan and Dr. Oses.

■■ The circuit court's determination was primarily based upon the "similar locality" rule, which generally requires that a medical expert testifying about the professional conduct of a physician be familiar with the customary standard of practice in the locality in which the physician practices. (*Stogsdill v. Manor Convalescent Home, Inc.* (1976), 35 Ill. App. 3d 634, 343 N.E.2d 589.) The rule was developed at a time when there were substantial differences between the medical education opportunities available to rural physicians and urban ones. (*Stogsdill*, 35 Ill. App. 3d 634, 653, 343 N.E.2d 589, 604.) But the rule as it has developed in modern times has been greatly limited in its effect. As our supreme court has recently indicated, an expert is not disqualified by lack of familiarity with the practice in a particular locality if there are uniform standards applicable to a specific situation throughout the country. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 247, 489 N.E.2d 867, 874-75.) In this cause Dr. Maher testified that a review of medical records is a valid and generally accepted form of peer review. Although he admitted that he was not specifically familiar with the standards of Humana Hospital, he stated that he was familiar with the standards established by the joint commission on hospital accreditation, by Medicare, and by the American Board of Surgery. He also testified that he believed that Humana was accredited and therefore would follow the standards on records review with which he was familiar. Dr. Maher also testified that in his medical career he had been involved in peer review in between 3,000 and 10,000 instances. Based upon this testimony we find that the similar locality rule was satisfied and that Dr. Maher's testimony was properly heard.

■ The circuit court also found that Dr. Maher should have been

disqualified because his specialty differed from that of Dr. Riordan. But Dr. Maher testified that over his 35-year medical career he had handled 20 to 25 trauma patients a year. Accordingly, we find that the circuit court erred in this determination, and we need not determine whether, absent this experience, Dr. Maher would have been qualified to testify.

For all the reasons set forth in this opinion, we find that the circuit court erred in finding that the expert testimony of Dr. Maher should have been barred. We therefore reverse the judgment of the circuit court and remand the cause for reinstatement of the penalties imposed upon Dr. Riordan.

Reversed and remanded with directions.

RIZZI and FREEMAN, JJ., concur.